1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

10
11

ISAIAH RASHAD TAYLOR,

               Petitioner,

12
13

v.

14

DR. JEFFREY BEARD, Secretary of the
California Department of Corrections and
Rehabilitation,

15
16

               Respondent.

17
18

Case No. 11cv1165-BTM (BLM)

**REPORT AND RECOMMENDATION
FOR ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS;
AND ORDER DENYING REQUEST
FOR APPOINTMENT OF COUNSEL**

[ECF Nos. 1 and 24]

19
20

      This Report and Recommendation is submitted to United States District Judge Barry

21
Ted Moskowitz pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the

22
United States District Court for the Southern District of California.   On May 26, 2011,

23
Petitioner, a state prisoner appearing pro se and in forma pauperis, filed a Petition for Writ

24
of Habeas Corpus.  ECF No. 1 ("Pet.").  Petitioner challenges his state court conviction of

25
kidnapping for robbery and kidnapping during a carjacking, and enhancements for personally

26
using a handgun during the commission of the felony kidnapping offenses, and for

27
committing the offenses in connection with a criminal street gang.  Id.; Lodgment 1 at 172.

28
Respondent filed an answer on November 20, 2012.  ECF No. 22. ("Ans.").  Petitioner filed

1   a traverse and a motion to appoint counsel on December 17, 2012.  ECF Nos. 24 and 25.

2   The Court has considered the above documents as well as the record as a whole.  Based

3   thereon, and for the reasons set forth below, the Court **DENIES** Petitioner's motion to

4   appoint counsel and **RECOMMENDS** that the Petition be **DENIED**.

5   **FACTUAL AND PROCEDURAL BACKGROUND**

6       The following facts are taken from the California Court of Appeal's opinion in People

7   v. Taylor, Appeal No. D055375, (Cal. Ct. of App. Dec. 16, 2010):

8   On February 1, 2007, at approximately 1:20 a.m., a group of men in a Nissan Maxima
    asked Samuel Kukukafi (Kukukafi or victim) for directions to the freeway as he was
9   walking home.  Minutes later, a man confronted Kukukafi, pointed his gun at his
    forehead and demanded his money.

10  Kukukafi later identified the gunman as Isaiah Rashad Taylor.

11
    Kukukafi emptied his pockets to show Taylor he did not have any money, only a pack
12  of cigarettes and an ATM card.  When Taylor saw the ATM card, he called to the men
    in the Maxima using a language Kukukafi did not understand.  A second man, who
13  was never identified, left the Maxima, stood behind Kukukafi and held a gun to the
    back of his head.  Taylor and the second man walked Kukukafi back to Kukukafi's car
14  at gunpoint and directed him to sit in the passenger seat.  The second man sat in the
    back seat.  Followed by the men in the Maxima, Taylor drove Kukukafi's car to a walk-
15  up ATM and demanded Kukukafi obtain cash.  Taylor and the second man kept their
    guns pointed at Kukukafi.
16
    Kukukafi was unable to withdraw money from his account.  He explained he had
17  deposited his paycheck earlier that evening but it had not yet cleared.  Kukukafi
    showed the deposit slip to Taylor.  Taylor spoke to the men in the Maxima, again
18  using a language Kukukafi did not understand.  Taylor said, "Let's go and try another
    ATM."  He drove Kukukafi to a drive-up ATM at another location.  Kukukafi could not
19  retrieve any money from his account.  The ATM receipt showed the second attempted
    transaction occurred at 1:43 a.m.
20
    The second man directed Taylor to give his knit beanie to Kukukafi, and instructed
21  Kukukafi to pull the beanie over his head and eyes while they were driving.  Taylor
    drove to a parking complex near an apartment building.  Kukukafi was allowed to
22  remove the beanie.  While the second man continued to hold Kukukafi at gunpoint,
    Taylor removed the radio from Kukukafi's car, explaining "Sorry, I have to do that
23  since we didn't get anything from you.  Now we need this money.  We need anything
    right now, so, sorry, we're going to take your radio."  Taylor gave the car radio to the
24  second man, who left with the men in the Maxima and did not return.

25  Shortly before 3:40 a.m., Taylor drove Kukukafi, who had the beanie over his head
    and face, to a third ATM.  He was allowed to remove the beanie at the ATM.  Again,
26  Kukukafi could not make a withdrawal.  Taylor became angry.  He pointed the gun
    at Kukukafi's head with one hand and grabbed Kukukafi's shirt with the other.  Taylor
27  said, "I need this money today...We have to go to the mall tomorrow.  I want to buy
    gold and clothes and shoes...Man, if you piss me off, man.  This is [what] I do for a
28  living.  Don't waste my time.  I'm going to kill you.  I don't play with money."

To appease Taylor, Kukukafi said he would take him to the mall in the morning and would buy him anything he wanted.

Taylor drove to an apartment complex where he spoke with two men. One of the men sat in the back seat of the car. Taylor instructed Kukukafi to pull the knit beanie over his face again and drove to another apartment complex. Taylor spoke in slang language to the man sitting in the back seat of the victim's car. He told Kukukafi, "My soldier's going to watch you." Taylor gave his gun to his "soldier" and instructed him to "blow [Kukukafi's] head off" if he tried "something wrong."

Kukukafi later identified the "soldier" as Larry Stillwell. When Taylor did not return in the morning, Stillwell became anxious. Stillwell said if Kukukafi could get the money out of the bank, he would release him. Stillwell allowed Kukukafi to drive. When Kukukafi saw two motorcycle policemen parked on the side of the street, he maneuvered the car in front of them and jumped out. Stillwell ran from the scene and discarded the gun, which was located by police. Police officers apprehended Stillwell later that day.

Stillwell had a tattoo indicating he was a member of the West Coast Crips, a criminal street gang known to have committed robberies, rapes, murders and kidnappings for robbery. Stillwell stated he did not know the name of the man who had picked him up in the early morning hours of February 1, 2007. He only knew his gang name, "hubootie." A police officer recalled that Taylor's gang moniker was "Holi Fu 3," and arrested him on felony charges of kidnapping for robbery and kidnapping during a carjacking.

Lodgment 6 at 3-5.

On June 26, 2008, a jury convicted Petitioner of kidnapping for robbery and kidnapping during a carjacking. Lodgment 1 at 172-73. The jury also found that Petitioner personally used a handgun in the commission of the felony kidnapping offenses and committed the offenses in connection with a criminal street gang. Id. On June 19, 2009, the trial court sentenced Petitioner to an indeterminate term of life in prison with the possibility of parole plus ten years. Id.

**A.    Direct Appeal**

Petitioner appealed to the California Court of Appeal, Fourth Appellate District, Division One, raising six claims for relief. Lodgment 3. Specifically, Petitioner alleged that: (1) admission of the suggestive identification evidence violated his rights to due process and a fair trial; (2) trial counsel provided ineffective assistance by failing to interview potential alibi witnesses; (3) the evidence was insufficient to support the gang enhancement; (4) trial counsel provided ineffective assistance by failing to stipulate Petitioner was a gang member or move to bifurcate the gang allegations; (5) trial counsel provided ineffective assistance

1   by failing to object to testimony that Petitioner had been on probation; and (6) the

2   accumulation of errors warrants reversal.  Id. at 12-40.  In an unpublished opinion filed on

3   December 16, 2010, the Court of Appeal affirmed the judgment.  Lodgment 6.

4         On January 25, 2011, Petitioner filed a petition for review in the California Supreme

5   Court, alleging that: (1) admission of the suggestive identification evidence violated his

6   rights to due process and a fair trial; and (2) trial counsel provided ineffective assistance in

7   five different ways.  Lodgment 7.  The California Supreme Court summarily denied the

8   petition on March 30, 2011.  Lodgment 8.

9   **B.**    **Collateral Challenge**

10         In the instant federal Petition, Petitioner alleges the same six claims he raised on

11   direct appeal to the California Court of Appeal: (1) admission of the suggestive identification

12   evidence violated his rights to due process and a fair trial; (2) trial counsel provided

13   ineffective assistance by failing to interview potential alibi witnesses; (3) the evidence was

14   insufficient to support the gang enhancement; (4) trial counsel provided ineffective

15   assistance by failing to stipulate Petitioner was a gang member or move to bifurcate the

16   gang allegations; (5) trial counsel provided ineffective assistance by failing to object to

17   testimony that Petitioner had been on probation; and (6) the accumulation of errors

18   warrants reversal.[1]  Pet. at 6-9; see also Lodgment 3.

19         On September 1, 2011, Respondent filed a motion to dismiss the Petition based on

20   Petitioner's failure to exhaust his state court remedies.[2]  ECF No. 8.  On November 3, 2011,

21   Petitioner filed a motion to stay and abey his federal petition to exhaust his claims in state

22   court.  ECF No. 10.  On December 2, 2011, this Court issued a Report and Recommendation

23   for an order granting Respondent's motion to dismiss and denying the motion for stay and

24

25

26

27         [1] Petitioner's memorandum of points and authorities supporting his federal petition is merely a duplicate of his state court appellate brief.  See Lodgment 3.

28         [2] Specifically, Respondent asserted that Petitioner failed to exhaust his third claim for relief that there was insufficient evidence to support his gang enhancement.  ECF No. 8.

abeyance.[3]   ECF No. 11.   On September 18, 2012, District Judge Barry Ted Moskowitz denied this Court's Report and Recommendation as moot because Petitioner, during the pendency of the district court's ruling on this Court's Report and Recommendation, exhausted claims three and six by filing a petition for writ of habeas corpus in the California Supreme Court.   ECF No. 18.   The California Supreme Court denied the petition without comment on January 25, 2012.   ECF No. 16 at 15.

On November 20, 2012, Respondent filed an answer to the petition.   ECF No. 22.   On December 17, 2012, Petitioner filed a traverse to Respondent's answer and a motion to appoint counsel.   ECF Nos. 24 and 25.

## SCOPE OF REVIEW

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (West 2012).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.   Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State

---

[3] Although Respondent argued only that Petitioner's third claim for relief was unexhausted, this Court's review of the record indicated that both claims three and six were unexhausted.   See ECF No. 11 at 6-7.

court proceeding.

28 U.S.C. § 2254(d) (West 2012).  In making this determination, a court may consider a lower court's analysis.  Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (authorizing a reviewing court to look through to the last reasoned state court decision).  Summary denials are presumed to constitute adjudications on the merits unless "there is reason to think some other explanation for the state court's decision is more likely."  Harrington v. Richter, 131 S.Ct. 770, 784-785 (2011).  Additionally, even where a state court does not mention a claim, there is a rebuttable presumption that the state court adjudicated the claim on the merits. Johnson v. Williams, 568 U.S. ----, 2013 WL 610199, at *6 (2013).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

A state court's decision is an "unreasonable application" of clearly established federal law where the state court "'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413).  "[A] federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable."  Id. at 75-76 (citations and internal quotation marks omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.

If the state court provided no explanation of its reasoning, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree

1   that those arguments or theories are inconsistent with the holding in a prior decision of [the

2   Supreme Court]."  Harrington, 131 S.Ct. at 786.  In other words, a federal court may not

3   grant habeas relief if any fairminded jurist could find the state court's ruling consistent with

4   relevant Supreme Court precedent.  Id.

5        Habeas relief also is available if the state court's adjudication of a claim "resulted in

6   a decision that was based on an unreasonable determination of the facts in light of the

7   evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(2) (West 2012);

8   Wood v. Allen, 130 S.Ct. 841, 845 (2010).  A state court's decision will not be overturned

9   on factual grounds unless this Court finds that the state court's factual determinations were

10  objectively unreasonable in light of the evidence presented in state court.  See Miller-El, 537

11  U.S. at 340 (2003); see also Rice v. Collins, 546 U.S. 333, 341-42 (2006) (the fact that

12  "[r]easonable minds reviewing the record might disagree" does not render a decision

13  objectively unreasonable).  This Court will presume that the state court's factual findings are

14  correct, and Petitioner may overcome that presumption only by clear and convincing

15  evidence.  See 28 U.S.C. § 2254(e)(1); Schriro v. Landrigan, 550 U.S. 465, 473-474 (2007).

16       The exhaustion of available state judicial remedies is a prerequisite to a federal

17  court's consideration of claims presented in habeas corpus proceedings.  28 U.S.C. §

18  2254(b); see Rose v. Lundy, 455 U.S. 509, 522 (1982); McQueary v. Blodgett, 924 F.2d 829,

19  833 (9th Cir. 1991).  Exhaustion of a habeas petitioner's federal claims requires that they

20  have been "fairly presented" in each appropriate state court, including a state supreme court

21  with powers of discretionary review.  Baldwin v. Reese, 541 U.S. 27, 29 (2004).  However,

22  claims are not exhausted by mere presentation to the state appellate system.  A petitioner

23  also must "alert[] [the state] court to the federal nature of the claim." Id. at 29.  A petitioner

24  may indicate a federal claim by citing the source of federal law upon which he relies, or by

25  merely labeling the claim as "federal."  Id. at 32.

26                                 **DISCUSSION**

27       Petitioner presents six grounds for habeas relief.  First, Petitioner argues that the trial

28  court's admission of suggestive identification evidence violated his rights to due process and

a fair trial.  Pet. at 19-21.  Petitioner's second, fourth, and fifth claims allege that Petitioner's trial counsel rendered ineffective assistance.  Specifically, Petitioner alleges that his trial counsel was ineffective by failing to interview potential alibi witnesses, failing to stipulate that Petitioner was a gang member or bifurcating the gang allegations, and failing to object to testimony that Petitioner had been on probation.  Id. at 31-36, 42-47.  Petitioner's third claim alleges that there was insufficient evidence to support his gang enhancement.  Id. at 36-42.  Finally, in his sixth claim, Petitioner alleges that the accumulation of errors warrants reversal.  Id. at 48-49.  Respondent generally contends that the state court's denial of Petitioner's claims was not contrary to, or an unreasonable application of, clearly established federal law.[4]  Ans. at 15.

## A. The Victim's Identification of Petitioner Did Not Violate Petitioner's Constitutional Rights

Petitioner argues that his identification at the preliminary hearing was unduly suggestive, and therefore violated his rights to due process and a fair trial.  Pet. at 19-21. Specifically, Petitioner argues that his identification was unduly suggestive because the victim had failed to identify Petitioner prior to the preliminary hearing and, during the preliminary hearing, Petitioner was wearing jail clothes and seated next to Larry Stillwell, whom the victim had previously identified as a co-assailant.  Id.  Respondent contends that the state court's denial of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law.  Ans. at 15.

Petitioner presented this claim to the California Supreme Court in a habeas corpus petition in the same manner as the appellate court.  Lodgments 3 and 7.  The petition was summarily denied without a statement of reasoning or citation of authority.  Lodgment 8. The appellate court denied the claim in a reasoned opinion.  Lodgment 6.  The Court will therefore look through the silent denial by the state supreme court to the appellate court opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991).  The appellate court stated:

---

[4] In addition, Respondent contends that Petitioner's third claim, that there was insufficient evidence to support the gang enhancement, is procedurally barred.  Ans. at 37.

-8-                                              11cv1165-BTM (BLM)

Taylor argues his identification at trial was tainted by the suggestive circumstances of his identification at the preliminary hearing.  He contends the suggestive identification was not reliable and deprived him of his right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution. [] We address Taylor's claim after setting forth the applicable facts and relevant law.

A.  Facts

In his initial interview with police after the incident, Kukukafi described Taylor as a 19-or 20-year-old Black man, 5 feet 11 inches tall, weighing approximately 200 pounds.  Kukukafi said Taylor's hair was in cornrows and he was wearing a dark sweatshirt with a white stripe across the top.  Detectives asked Kukukafi to view three photographic lineups.  The first lineup consisted of a photograph of a suspect and two filler photographs, none of which were Taylor.  Kukukafi stated a man in one of the filler photographs looked like Taylor but he was not certain it was him.  The second lineup consisted of six Polaroid photographs, including a poor quality photograph of Taylor.  Kukukafi did not identify Taylor.  The third lineup also consisted of six photographs, one of which was Taylor's driver's license photo.  Kukukafi did not identify Taylor, saying, "I can't tell. [The perpetrator] doesn't look like anyone in the photos."

At the preliminary hearing on May 16, 2007, Taylor was seated at the defense table next to Stillwell, [] whom Kukukafi had identified on February 1 as the person that had been with him when he notified police officers of the kidnapping.  Taylor and Stillwell were both wearing prison clothing.  Kukukafi identified Taylor as the man who had asked him for directions and then kidnapped him at gunpoint.

B.  Law

Due process requires that a defendant be identified by a method that is fair and reliable under the circumstances.  (Simmons v. United States (1968) 390 U.S. 377, 384 [])  An identification of a defendant from a procedure that is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" is constitutionally defective and must be excluded from evidence.  (Ibid.; Neil v. Biggers (1972) 409 U.S. 188, 198) []).

To determine whether the admission of identification evidence violates a defendant's right to due process of law, we first consider whether the identification procedure was unduly suggestive and unnecessary, and, if so, whether the identification itself was nevertheless reliable under the totality of the circumstances.  A procedure is unfair which suggests in advance of identification by the witness the identity of the person suspected by the police.

In determining whether a suggestive identification procedure nevertheless results in a reliable identification, we review the totality of the circumstances under which the identification was made, considering such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of identification, and the lapse of time between the offense and the identification.  (Biggers, supra, 409 U.S. at 199-200; Manson v. Brathwaite (1977) 432 U.S. 98, 114 []).

[. . .]

D.  Analysis

1   The circumstances of Taylor's in-court appearance at the preliminary hearing clearly
2   suggested the identity of the perpetrator of the kidnapping and robbery in advance
    of his identification by Kukukafi, and the identification procedure was therefore unfair
3   and unduly suggestive. []

4   [. . .]

5   At the preliminary hearing, Taylor and Stillwell were seated at defense counsel's
    table.  Both men were wearing prison clothing.  Kukukafi previously had identified
6   Stillwell as the person who had held him hostage from approximately 4:00 a.m. to
    8:00 a.m. on February 1.  Taylor's appearance at the defense table with a previously
7   identified codefendant clearly suggested to Kukukafi that the authorities believed he
    was the perpetrator. []  Thus, the circumstances of Taylor's preliminary hearing
8   suggested the "one-on-one confrontation" this court has characterized as "inherently
    suggestive." []

9   Having determined that the pretrial identification procedure at Taylor's preliminary
10  hearing was unduly suggestive, we now consider whether the identification was
    nevertheless reliable.  In doing so, we consider the totality of the circumstances in
11  which the identification was made, employing the nonexclusive factors described by
    the United States Supreme Court in Biggers and Brathwaite, which were adopted by
12  the California Supreme Court in Alexander and Cunningham.

13  The record clearly shows that Kukukafi had an extended opportunity to observe the
    defendant during the commission of the crimes.  Kukukafi spent more than two hours
14  in close proximity to Taylor.  During one confrontation, Taylor held the front of
    Kukukafi's shirt with his hand.  Kukukafi was able to describe the events of the night
15  in detail, indicating he was not impaired and that his level of attention was good.
    Kukukafi accurately described the sweatshirt Taylor was wearing at the time of his
16  arrest and the type of gun he used.

17  Kukukafi was certain about his identification of Taylor, stating "it was the same face
    the whole time." Both men were Black.  We infer from the lack of controversy at trial
18  that the description of the suspect Kukukafi gave to the police matched Taylor's
    physical description.  The preliminary hearing occurred three and a half months after
19  the offense, which is not an unreasonable lapse of time.  Thus, the application of the
    factors adopted by the United States Supreme Court and the California Supreme
20  Court support the reliability of Taylor's identification.

21  Having independently reviewed the record, we conclude that Taylor's identification
    was reliable under the totality of the circumstances.  Thus, the trial court did not
22  violate Taylor's due process rights to a fair trial when it allowed the identification
    evidence to go to the jury.

23  Circumstantial evidence also supports the reliability of Taylor's identification.  Taylor
    was arrested by the FBI at 6:00 a.m. on February 1, 2007, which explained his failure
24  to return to the car.  When he was arrested, Taylor was wearing an Ecko sweatshirt.
    Taylor's sweatshirt was a close or exact match of the Ecko sweatshirt worn by the
25  perpetrator who was with Kukukafi at the drive-up ATM.

26  The circumstances of Taylor's identification were disclosed to the defense and subject
    to thorough cross-examination.  The jury was able to evaluate the reliability of the
27  identification by evaluating the victim's credibility, comparing the victim's description
    of his abductor to Taylor's physical characteristics and viewing the photographs of
28  Taylor that had been shown to the victim at the lineups.  [The jury] heard expert

1
2
3
4

testimony on the factors supporting the reliability of the eyewitness's identification and could apply those factors to the evidence before it. Evidence about Taylor's DNA on the gun and beanie was also presented to the jury, as was the evidence about the similarities between the sweatshirt Taylor was wearing when he was arrested and the sweatshirt the perpetrator was wearing when he was photographed with Kukukafi at the drive-up ATM.

5
Lodgment 6 at 6-13.

6        Admission of a witness's pretrial identification violates due process when: (1) the

7   identification procedure was impermissibly suggestive and (2) the suggestive procedure gave

8   rise to a substantial likelihood of misidentification. Perry v. New Hampshire, 132 S.Ct. 716,

9   724 (2012); Manson v. Brathwaite, 432 U.S. 98, 106-07 (1977). Even when the government

10  uses an unduly suggestive procedure, the identification may be admitted where surrounding

11  circumstances indicate the identification nonetheless is reliable under the totality of the

12  circumstances. Perry, 132 S.Ct. at 724-25. In determining whether the identification is

13  reliable, courts should consider five factors: (1) the witness's opportunity to observe the

14  individual during the commission of the crime; (2) the degree of attention focused on the

15  individual by the witness during the crime; (3) the accuracy of the witness's description of

16  the individual prior to the identification; (4) the level of certainty demonstrated by the

17  witness during the identification; and (5) the length of time between the crime and the

18  identification. Neil v. Biggers, 409 U.S. 188, 199-200 (1972); U.S. v. Drake, 543 F.3d 1080,

19  1088 (9th Cir. 2008). Even if the identification violated Petitioner's due process rights, a

20  federal habeas court must determine whether the error was harmless. Merolillo v. Yates,

21  633 F.3d 444, 454 (9th Cir. 2011) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637-638

22  (1993))

23        In this case, the state court correctly applied clearly established federal law and found

24  the victim's identification of Petitioner to be unduly suggestive. Lodgment 6 at 9. In

25  accordance with that law, the Court applied the five factors set forth in Biggers, considered

26  the totality of the circumstances, and concluded that the in-court identification was reliable

27  and did not give rise to a substantial likelihood of misidentification. Id. at 10-13. This

28  Court's review of the record supports this determination.

1    At the preliminary hearing and at trial, the victim testified that he spent over an hour[5]

2  with the perpetrator during which time the commission of the crime, during which the victim

3  had multiple close encounters with the perpetrator and an extensive opportunity to observe

4  the perpetrator at close range.  Lodgment 2, Vol. 2 at 29.  The victim further testified that

5  he was not impaired during the commission of the crimes, that his level of attention to the

6  perpetrator was good, and that he was certain Petitioner was his assailant.  Lodgment 2, Vol.

7  6 at 953 and 975.  The victim also provided a physical description of the perpetrator that

8  was consistent with the Petitioner and accurately described the Ecko sweatshirt worn by the

9  perpetrator during the commission of the crime and by the Petitioner when he was arrested.

10  Id. at 981.  As a result, the Court finds there was ample evidence supporting the state

11  court's determination that the identification was reliable.

12    Even if the trial court had erred by admitting the in-court identification, the error was

13  harmless.  See Williams v. Stewart, 441 F.3d 1030, 1039 (9th Cir. 2006) (applying Brecht

14  harmless error analysis to alleged due process violation arising from admission of suggestive

15  pretrial identification).  Here, there was substantial circumstantial evidence supporting the

16  identification, including that Petitioner was wearing a sweatshirt at the time of his arrest that

17  was identical or extremely similar to the sweatshirt worn by the perpetrator as described by

18  the victim; Petitioner's DNA was found on the knit beanie given to the victim by the

19  perpetrator; and, Petitioner's DNA was found on the gun given by the perpetrator to Stillwell.

20  Lodgment 2, Vol. 7 at 1070-1075.  Given the significant circumstantial evidence supporting

21  the identification, any error in admitting the identification was harmless because it did not

22  have a substantial and injurious effect in determining the jury's verdict.  Pirtle v. Scribner,

23  311 Fed.Appx 76, 79 (9th Cir. 2009) (admission of impermissibly suggestive identification

24  harmless where there is sufficient and independent evidence establishing guilt).  In addition,

25  evidence undermining the identification, such as the three mis-identifications or non-

26  _____

27      [5] The state appellate court explained that "Kukukafi spent more than two hours in close proximity to Taylor."
28  Lodgment 3.  However, a review of the victim's testimony at both the preliminary hearing and at trial indicate that
Kukukafi spent approximately one hour with Petitioner during the crime.  See, e.g., Lodgment 2, Vol. 1 at 45; Id., Vol.
6 at 972.

1  identifications based on the photo lineups, was provided to the defense and defense counsel

2  extensively cross-examined the victim.  Lodgment 2, Vol. 6 at 952-89; see Trevino v.

3  Hardison, 245 Fed.Appx. 605 (9th Cir. 2007) (citing Simmons v. United States, 390 U.S. 377,

4  384 (1968) (explaining that unduly suggestive identifications can be mitigated "by a course

5  of cross-examination at trial which exposes to the jury the method's potential for error.").

6  　　　　　Accordingly, the state court's determination that the in-court identification was reliable

7  and that Petitioner's constitutional rights were not violated was not contrary to, or an

8  unreasonable application of, clearly established federal law, and the Court **RECOMMENDS**

9  that Petitioner's first claim be **DENIED**.

10  **B.**　　**Petitioner Received Effective Assistance of Counsel**

11  　　　　　Petitioner's second, fourth, and fifth claims allege that Petitioner's trial counsel was

12  constitutionally ineffective.  Petitioner alleges that his trial counsel was ineffective by failing

13  to interview potential alibi witnesses, failing to stipulate that Petitioner was a gang member

14  or bifurcating the gang allegations, and failing to object to testimony that Petitioner had

15  been on probation.  Pet. at 31-36, 42-47.  Respondent contends that Petitioner received

16  effective assistance of counsel, and that the state court's denial of Petitioner's ineffective

17  assistance of counsel claims was not contrary to, or an unreasonable application of, clearly

18  established federal law.  Ans. at 18.

19  　　　　　To prevail on a claim of ineffective assistance of counsel in federal court, Petitioner

20  must first establish that his trial counsel's performance fell below an objective standard of

21  reasonableness.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  "This requires a

22  showing that counsel made errors so serious that counsel was not functioning as the

23  'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  Judicial scrutiny of

24  counsel's performance must be "highly deferential."  Id. at 689.  Second, he must show that

25  counsel's deficient performance prejudiced the defense, such that the result of the

26  proceeding would have been different absent counsel's errors.  Id. at 687.  On federal

27  habeas review, "the question is not whether counsel's actions were reasonable, [but]

28  whether there is any reasonable argument that counsel satisfied Strickland's deferential

1  standard." <u>Harrington v. Richter</u>, 131 S.Ct. 770, 788 (2011).  The Court need not address

2  the performance prong if the claim can be resolved on the ground of lack of sufficient

3  prejudice. <u>Strickland</u>, 466 U.S. at 697.

4          1.    <u>Failure to Interview Potential Alibi Witnesses</u>

5          Petitioner argues that his trial counsel failed to interview his mother, two brothers,

6  and Larry Stillwell, all of whom Petitioner alleges would have provided an alibi.  Pet. at 24.

7  Petitioner alleges that his mother, two brothers, and Larry Stillwell would have testified that

8  Petitioner was asleep at home during the crime, and that Larry Stillwell had borrowed the

9  Ecko sweatshirt and beanie.  <u>Id.</u> at 25.  Petitioner also claims that Stillwell would have

10  testified that he owned the gun used during the kidnapping, and that he had let Petitioner

11  play with it on another occasion, thereby explaining the presence of Petitioner's DNA on the

12  gun.  <u>Id.</u>  Respondent contends that Petitioner's trial counsel conducted a reasonable

13  investigation and made a sound strategic decision not to pursue an alibi defense.  Ans. at

14  28.  The state appellate court rejected this claim as follows:

15      Taylor argues Besse failed to personally interview Taylor's mother, two brothers, and
16      Stillwell, who were potential alibi witnesses.  Taylor asserts the testimony of the
    witnesses would have established that he was at home asleep during the kidnapping,
    that Stillwell had borrowed the beanie and the Ecko sweatshirt on the evening of the
17      kidnapping, and that Stillwell owned the gun used in the kidnapping and had allowed
    Taylor to play with it on another occasion.  Taylor contends Besse breached his duty
18      to investigate the facts of his case. [] He maintains Besse's failure to interview his
    mother, brothers and Stillwell deprived him of an alibi defense and constitutes
19      ineffective assistance of counsel. []

20      Before turning to a discussion of the merits, we set forth the facts relevant to Taylor's
    claim that Besse provided ineffective assistance of counsel by failing to interview
21      potential alibi witnesses.

22      Stillwell claimed that Taylor was not involved in the kidnapping.  However, at the
    preliminary hearing, a police officer testified that Stillwell had led police to Taylor by
23      referring to him by a name that resembled Taylor's gang moniker, "Holi Fu 3."
    Taylor's first attorney, Cutter, considered calling Stillwell as a witness; however,
24      Stillwell's attorney refused to allow his client to be interviewed.  At Cutter's direction,
    to further investigate Stillwell's claim that Taylor was not involved in Kukukafi's
25      kidnapping, a defense investigator interviewed Taylor's mother and two brothers,
    Deron and Anthony.
26
    While preparing for trial, Cutter reviewed the statement of Taylor's mother and
27      brothers.  She was concerned about factual differences between Stillwell's story and
    the other evidence.  Cutter had not decided whether to call Stillwell to testify when
28      the case was reassigned to Attorney Besse.

1
2
3
4
5

When he received the case, Besse reviewed the case file.  Besse testified that he decided, without interviewing Taylor's mother, brothers or Stillwell, not to present an alibi defense.  Besse did not believe the potential alibi witnesses would hold up well on cross-examination.  In addition he would have been required to turn over their statements to the prosecution.  Besse did not interview Stillwell because, no matter what Stillwell told him, "[Stillwell] already had said that my client was the one that committed the crime.  And that was going to come from a police officer."  Besse decided instead to focus on challenging the eyewitness identification.

6

[. . .]

7
8
9

Besse's decision not to have Stillwell testify for the defense can be explained on the basis of knowledgeable choice of trial tactics and does not constitute ineffective assistance of counsel. []  The record shows that Besse reviewed Stillwell's letter and the statements he had made to the police.  He believed Stillwell's accounts were inconsistent and potentially harmful to the defense.

10
11
12
13
14
15

The defense conducted a reasonable inquiry when its investigator interviewed Taylor's mother and brothers.  There is no fixed rule requiring counsel to independently verify investigatory reports.  Further, our independent review of the record shows there are inconsistencies in the statements of Taylor's mother and brothers which would have made an alibi defense problematic. []  Under applicable criminal and discovery rules, Besse would have been required to turn over the witness's statements to the prosecution, which would have allowed the prosecution to exploit the weaknesses and inconsistencies in the statements that Taylor's family members made to the defense investigator. []  Besse made a reasonable tactical decision when he determined that the family's testimony had the potential to undermine what he determined was Taylor's strongest defense-challenging the eyewitness identification-by presenting a weak alibi defense.

16
17
18
19

We conclude that Besse met his duty to make reasonable investigation into the facts of the case when he received Stillwell's statements to the police and the testimony at the preliminary hearing, and reviewed the defense's investigative report of his interviews with Taylor's family members. []  Besse's strategic choice not to pursue an alibi defense was a reasonable decision that made further investigation unnecessary, and did not constitute ineffective assistance of counsel. []

20

Lodgment 6 at 24-31.

21
22
23
24
25
26
27
28

Clearly established federal law provides that trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  Strickland, 466 U.S. at 91.  "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  Cox v. Del Papa, 542 F.3d 669, 679 (9th Cir. 2008), cert. denied, 555 U.S. 1185 (2009).  Moreover, a claim of failure to interview a witness cannot establish ineffective assistance of counsel "when the person's account is otherwise fairly known to defense counsel."  Eggleston v. United States, 798 F.2d 374, 376

1  (9th Cir. 1986).

2       Here, Petitioner's initial trial counsel, Courtney Cutter, ordered interviews of

3  Petitioner's mother and two brothers.  Lodgment 2, Vol. 16 at 1834.  After reviewing the

4  transcripts of those interviews, Petitioner's second trial counsel, Neil Besse, who ultimately

5  represented Petitioner at trial, decided against calling Petitioner's mother and two brothers

6  because he was concerned their testimony would not withstand cross examination.

7  Lodgment 2, Vol. 16 at 1834.  Furthermore, Besse explained that his decision to not call

8  Larry Stillwell as a witness was based on Stillwell's prior statement to police that Taylor was

9  the kidnapper.  Id. at 1136.  In addition, Besse testified that he made a tactical decision to

10  focus his client's defense on the government's burden of proof.  Id. at 1836.  Hence,

11  Petitioner cannot show that his trial counsel's performance fell below an objective standard

12  of reasonableness.[6]  Accordingly, the state court's denial of this claim was not contrary to,

13  or an unreasonable application of, clearly established federal law and the Court

14  **RECOMMENDS** that Petitioner's second claim be **DENIED**.

15       2.    Failure to Stipulate to Gang Membership or Bifurcate Gang Allegations

16       Petitioner also faults his trial counsel for failing to stipulate to his gang membership

17  and failing to bifurcate the gang allegations.  Pet. at 35.  More specifically, Petitioner alleges

18  that he was prejudiced by the admission of evidence relating to his gang membership,

19  including testimony from San Diego Police Detective Johnny Keene describing numerous

20  violent crimes committed by the West Coast Crips.  Id. at 36.  Respondent argues that

21  Petitioner cannot show his counsel's performance was deficient or that Petitioner was

22  prejudiced by any of his counsel's purported deficiencies.  Ans. at 29.  The state appellate

23  court rejected this claim as follows:

24       Besse's performance did not fall below professional standards when he did not
        stipulate to gang membership.  "The general rule is that the prosecution in a criminal
25       case cannot be compelled to accept a stipulation if the effect would be to deprive the
        state's case of it's persuasiveness and forcefulness."  (People v. Edelbacher (1989)
26       47 Cal.3d 983, 1007; People v. Thornton (2000) 85 Cal.App.4th 44, 49 [this general

27

28       [6] Moreover, as discussed in the next section, Petitioner has not and cannot establish prejudice in light of the
     overwhelming evidence of guilt.

1    rule is subject to the court's exercise of discretion under [California Evidence Code section 352].)  There is no suggestion in the record that the prosecution would have
2    been willing to accept such a stipulation.  (People v. McClellan (1969) 71 Cal.2d 793, 802 [noting policy against forcing prosecutor "to accept stipulations that soften the
3    impact of the evidence in its entirety"].)

4    On the issue of prejudice, without deciding error with respect to the failure to request a bifurcation of the gang enhancement, we determine Taylor does not establish that
5    he was prejudiced by the testimony about his gang membership and the criminal activities of the West Coast Crips.   "If a defendant has failed to show that the
6    challenged actions of counsel were prejudicial, a reviewing court may reject the claim on that ground without determining whether counsel's performance was deficient."
7    (Strickland, supra, 466 U.S. at p. 697; People v. Sapp (2003) 31 Cal.4th 240, 263.) In determining whether counsel's conduct affected the reliability of the trial as to
8    undermine the confidence in the result [], we consider whether "but for" counsel's allegedly deficient performance "'there is a reasonable probability the result of the
9    proceeding would have been different.'" (Sapp, supra, at p. 263, quoting People v. Cash (2003) 28 Cal.4th 703, 734).

10

11   In view of Kukukafi's description of Taylor as the man who held him at gunpoint for several hours; threatened to kill him if he did not obtain money; enlisted the
     assistance of other gang members during the carjacking, kidnapping and robbery;
12   told the victim he was a gangster; and gave a gun to his "soldier" and instructed him to shoot Kukukafi if necessary, Taylor does not show there is a reasonable probability
13   the result of his conviction on the instant offenses would have been different had defense counsel sought to bifurcate the gang enhancement allegation or stipulated
14   to gang membership. []

15   Lodgment 6 at 32-33.

16          As summarized by the appellate court, there was overwhelming evidence establishing

17   Petitioner's guilt for the substantive crimes.  The victim testified that he had extended, close

18   interactions with the perpetrator and he identified Petitioner as the perpetrator.  Lodgment

19   2, Vol. 6 at 899-945.  The victim further testified that Petitioner held a gun to his head,

20   ordered him to cover his head with a beanie while Petitioner drove him to various locations,

21   and forced him to repeatedly attempt to withdraw money from his ATM, and then gave his

22   gun to a subordinate "soldier" and ordered that man to watch him and to "blow his head off"

23   if he did something wrong.  Id.  This testimony was supported by substantial additional

24   evidence, including that Petitioner's DNA was found on the beanie and the gun and the ATM

25   photos showed a man wearing a sweatshirt identical to the sweatshirt Petitioner was wearing

26   when he was arrested.  Lodgment 2, Vol. 7 at 1070-1075.  Given the overwhelming evidence

27   establishing Petitioner's guilt for the kidnapping crimes, the state court's determination that

28   Petitioner could not prove prejudice based on the failure to stipulate to gang membership

or to argue for bifurcation of the gang enhancement was not contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, this Court **RECOMMENDS** that Petitioner's fourth claim be **DENIED**.

> 3.    Failure to Object to Testimony that Petitioner had been on Probation

Petitioner claims his trial counsel was ineffective for failing to object to testimony that he had been on probation.  Pet. at 9.  Specifically, Petitioner argues that he was prejudiced by the admission of this testimony because Petitioner's probation status created an improper inference that he had a "criminal disposition and thus probably committed the [] charged offense."   Pet. at 39. (citations omitted).   Respondent contends that Petitioner's trial counsel's decision not to object to the testimony of Petitioner's probation status was a reasonable tactical decision.  Ans. at 30.  The state appellate court rejected this claim as follows:

> Besse's decision not to object to the detective's brief testimony about Taylor's probation status was a reasonable tactical decision [] and did not constitute ineffective assistance of counsel. [] Instead of drawing attention to the probation testimony, Besse elicited testimony that minimized the evidence in a manner favorable to the defense.  On cross examination, Detective Keene stated that Taylor had never been arrested for anything other than making a threat when he was a juvenile in 2004 and he was not connected to any of the crimes committed by the West Coast Crips to which Keene had testified.  In view of the minimal propensity evidence before the jury, we are not persuaded by Taylor's argument that Attorney Besse's performance was ineffective.

Lodgment 6 at 35.

A federal habeas court's review of counsel's tactical decisions "must be highly deferential" and accorded "a strong presumption of validity, regardless of whether [the court] agrees with it."  United States v. Quintero-Barraza, 78 F.3d 1344, 1349 (9th Cir. 1995).  In this case, Petitioner's trial counsel moved in limine to exclude any evidence of Petitioner's juvenile conviction and status as a probationer.  Lodgment 2, Vol. 3 at 522-24.  The trial court subsequently granted the motion.  Id. at 525.  During trial, however, El Cajon Police Department Detective James Juns testified that Petitioner yelled at him, "you can't touch me now, I'm on probation," and also testified that Petitioner had been on probation "with gang conditions."   Pet. at 38; Lodgment 2, Vol. 7 at 1132-1133.   Once these

statements were made, Petitioner's trial counsel had to make a tactical decision: object to the statements or attempt to minimize the testimony by cross examining Detective Juns and San Diego Police Detective Johnny Keene.  Lodgment 2, Vol. 7 at 1138-45; Lodgment 2, Vol. 9 at 1363-98.  Counsel chose to utilize cross-examination, and elicited testimony from Detective Juns where he acknowledged that he was unsure whether, during several of his encounters with Petitioner as a juvenile, Petitioner was accompanied by other gang members.  Lodgment 2, Vol. 7 at 1139.  Counsel also elicited the following testimony during his cross-examination of Detective Keene:

| | |
|---|---|
| Besse: | Those crimes you just mentioned, Mr. Taylor's never been arrested for any of those; right? |
| Keene: | Not to my knowledge, no. |
| Besse: | In fact, he's never been arrested for anything short of a threat when he was a juvenile. |
| Keene: | To the best of my knowledge, ah, yes. |
| Besse: | In terms of the juvenile threat, um, of course, you weren't there; right? |
| Keene: | Correct, I wasn't.  I believe it was an El Cajon case and I do not have the facts of that case. |
| Besse: | There was, um - - do you know anything about whether the victim was a gang member? |
| Keene: | I do not. |

Lodgment 2, Vol. 9 at 1376.

Given counsel's pretrial efforts to exclude the testimony, the brevity of the objectionable statements, and counsel's effective cross-examination, Petitioner cannot overcome the strong presumption that his trial counsel's tactical decision not to object to Detective Juns's testimony was reasonable.   In addition, given the nature of the objectionable statements, the cross-examination of the witnesses, and the overwhelming evidence of guilt, Petitioner cannot establish prejudice.  Accordingly, the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law. Hence, this Court **RECOMMENDS** that Petitioner's fifth claim be **DENIED**.

## C.   Sufficient Evidence Supported the Gang Enhancement Allegation

Petitioner claims that insufficient evidence supported the gang enhancement allegation. Pet. at 29.  Respondent contends that this claim is procedurally barred because it was rejected by the California Supreme Court with citations to In re Waltreus, 62 Cal.2d 218, 225 (1965) and In re Lindley, 29 Cal.2d 709 (1947).[7]  Alternatively, Respondent argues that there was sufficient evidence to support Petitioner's gang enhancement.  Ans. at 32.

Generally, this Court notes that it "must not take up a question of federal law presented in a case 'if the [state court's] decision rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Lee v. Kemna, 534 US. 362, 375 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). Respondent bears the burden of proving that California's procedural bars are independent and adequate.  Bennett v. Mueller, 322 F.3d 573, 585 (9th Cir. 2003).  Once Respondent meets its burden, Petitioner may rebut the procedural bar by setting forth "specific factual allegations that demonstrate the inadequacy of the state procedure."  Id. at 586.  First, Respondent asserts that Petitioner's claim is barred under Lindley, supra, which held that sufficiency of the evidence claims are not proper for consideration in state habeas proceedings.  The Ninth Circuit affirmed Lindley's procedural bar in Carter v. Giurbino, 385 F.3d 1194, 1197 (9th Cir. 2004), determining that California's Lindley rule is "not intertwined with federal substantive or procedural law" and, therefore, "is an independent state ground." Second, Respondent contends that Petitioner's claim is barred under In re Waltreus, supra. However, the Ninth Circuit has held that a Waltreus denial "is neither a ruling of procedural default nor a ruling on the merits" and that "Waltreus merely bars relitigation in state habeas proceedings of claims already litigated on direct appeal."  Carter, 385 F.3d at 1198. Petitioner's traverse alleges no facts or authority rebutting Respondent's assertion that his claim is procedurally barred.  Even assuming that no independent and adequate state law

---

[7]  Specifically, Respondent argues that Lindley bars petitioners from raising sufficiency of the evidence claims in state habeas petitions, and that Waltreus "indicates that a claim was raised on direct appeal, but the petitioner failed to file a timely petition for review, and the claim is then defaulted under California Rules of Court 28(e)."  Ans. at 31.

1    ground exists for barring this claim, Petitioner's claim fails on the merits.  See Walters, 45
2    F.3d at 1360 (explaining that where it is clear that a claim fails on the merits, the interests
3    of judicial efficiency are better served by addressing the claim on the merits rather than
4    invoking a procedural default).

5         The clearly established federal law regarding sufficiency of the evidence claims in the
6    criminal context is set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  Jackson claims face
7    a high bar in federal habeas proceedings.  Coleman v. Johnson, 132 S.Ct. 2060, 2062
8    (2012).  In Jackson, the Court held that the Fourteenth Amendment's  Clause is violated,
9    and an applicant is entitled to habeas corpus relief, "if it is found that upon the evidence
10   adduced at the trial no rational trier of fact could have found proof of guilt beyond a
11   reasonable doubt." Jackson, 443 U.S. at 324.  In making this determination, habeas courts
12   must respect "the province of the jury to determine the credibility of witnesses, resolve
13   evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that
14   the jury resolved all conflicts in a manner that supports the verdict." Walters v. Maass, 45
15   F.3d 1355, 1358 (9th Cir. 1995).  "Circumstantial evidence and inferences drawn from it may
16   be sufficient to sustain a conviction." United States v. Cordova Barajas, 360 F.3d 1037, 1041
17   (9th Cir. 2004) (citing United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir.1992)).
18   "Although it might have been possible to draw a different inference from the evidence, [a
19   federal habeas court is] required to resolve that conflict in favor of the prosecution." Ngo
20   v. Giurbino, 651 F.3d 1112, 1114-15 (9th Cir. 2011); see also Coleman, 132 S.Ct. at 2062.
21   (stating that "a federal court may not overturn a state court decision rejecting a sufficiency
22   of the evidence challenge simply because the federal court disagrees with the state court.
23   The federal court instead may do so only if the state court decision was 'objectively
24   unreasonable.'") (quoting Cavazos v. Smith, 132 S.Ct. 2, 4 (2011) (per curiam)); and
25   Jackson, 443 U.S. at 326 ("[A] federal habeas corpus court faced with a record of historical
26   facts that supports conflicting inferences must presume—even if it does not affirmatively
27   appear in the record—that the trier of fact resolved any such conflicts in favor of the
28   prosecution, and must defer to that resolution").  Federal habeas courts also must analyze

1   Jackson claims "with explicit reference to the substantive elements of the criminal offense

2   as defined by state law."  Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004) (en banc)

3   (quoting Jackson, 443 U.S. at 324, n.16).  When assessing the evidence presented at trial,

4   a reviewing court must conduct a thorough review of the state court record.  Jones v. Wood,

5   114 F.3d 1002, 1013 (9th Cir. 1997).

6          California law requires that prosecutors prove two elements to sustain a gang

7   enhancement.  First, the prosecutor must demonstrate that a defendant committed the

8   underlying felony "for the benefit of, at the direction of, or in association with a criminal

9   street gang." Cal. Penal Code § 186.22(b)(1); Briceno v. Scribner, 555 F.3d 1069, 1078 (9th

10  Cir. 2009).  Second, the prosecutor must demonstrate that the defendant committed the

11  underlying felony with the "specific intent to promote, further, or assist in any criminal

12  conduct by gang members."[8]  Id.  Merely being a member of a criminal street gang is not

13  sufficient to satisfy the second element.  Id.  The second step is satisfied if there is evidence

14  to promote, further, or assist in any criminal conduct by gang members, including the

15  current offenses.  People v. Albillar, 51 Cal.4th 47, 64-68 (2010); Emery v. Clark, 643 F.3d

16  1210, 1216 (9th Cir. 2011) (explaining that a gang enhancement requires "evidence upon

17  which a rational trier of fact could find that [the defendant] acted with the 'specific intent'

18  to promote, further or assist in some type of criminal conduct by gang members, which may

19  include the crimes of conviction.") (emphasis added).

20         In this case, the jury was presented with abundant evidence establishing that

21  Petitioner committed the kidnapping for the benefit of his gang, and that Petitioner had the

22  requisite specific intent to kidnap the victim in furtherance of his gang activities.  The victim

23

24  _____

25  [8]  The state appellate court explained the divergence in California and Ninth Circuit cases which interpret the
    "specific intent" requirement of Penal Code section 182.22.  Specifically, the court of appeal explained that California state
26  courts have held that the "specific intent" requirement is satisfied when the defendant has committed any felony offense,
    including the underlying offense; the Ninth Circuit, in contrast, has held that the "specific intent" requires intent to commit
    an offense other than the underlying offense.  Lodgment 6.  However, in its answer, Respondent correctly notes that this
27  disparity has been resolved by the California Supreme Court and recognized by the Ninth Circuit.  Ans. at 42.  In People
    v. Albillar, 51 Cal.4th 47 (2010), the California Supreme Court rejected the Ninth Circuit's reasoning in Briceno, and held
28  that the specific intent requirement applies to any criminal conduct, and that the specific intent need not be separate from
    the underlying criminal offense.  The Ninth Circuit adopted the California Supreme Court's holding in Emery v. Clark, 643
    F.3d 1210, 1215 (2011).

testified that Petitioner proclaimed that he was a gangster and that he heard Petitioner and the other men involved in the crime speaking a language consisting of rhyming slang. Lodgment 2, Vol. 6 at 902-03, 921.  San Diego Police Detective Johnny Keene testified that the rhyming slang was characteristic of the West Coast Crips street gang.  Lodgment 2, Vol. 7 at 1161-62.  Detective Keene also testified that Petitioner admitted to him that he was a member of the West Coast Crips street gang and that Petitioner had "WCC" tattooed on his neck.  Lodgment 2, Vol. 8 at 1307, 1331-32.  Detective Keene further testified that the West Coast Crips gang was known to commit pedestrian robberies.  Id.  The jury also heard testimony that Larry Stillwell, another documented gang member of the West Coast Crips and whom Petitioner referred to as his "soldier," assisted Petitioner in the robbery. Lodgment 2, Vol. 6 at 935.  Considering the evidence presented in the light most favorable to the prosecution, this Court finds that a rational trier of fact could have found beyond a reasonable doubt that Petitioner was guilty of active participation in a criminal street gang and that Petitioner had the specific intent to promote, further, and assist in criminal conduct by Petitioner's fellow gang members.  Accordingly, the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the Court **RECOMMENDS** that Petitioner's third claim be **DENIED**.

### D.    No Cumulative Error Exists to Warrant Reversal

Petitioner's sixth claim alleges that the combined effect of the errors described in claims one through five violates his federal due process rights and warrants reversal of his conviction.  Pet. at 40-41.  Respondent contends that there was no cumulative error because all of Petitioner's claims were rejected by the state court.  Ans. at 44.

The Ninth Circuit recognizes that the combined effect of discrete trial errors, even when none of them individually warrants relief, can in some circumstances have had a substantial and injurious effect on the jury's verdict.  See, e.g., Parle v. Runnels, 505 F.3d 922, 927 (9th  Cir. 2007), citing Chambers  v. Mississippi, 410 U.S. 284, 302-303 (1973), 410 U.S. at 298, 302-03; Alcala v. Woodford, 334 F.3d 862, 882-83 (9th Cir. 2003).  Relief for cumulative prejudice necessarily presupposes that the Court will find substantial error

1    occurred in connection with at least one of the petitioner's claims.  See Hayes v. Ayers, 632

2    F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional

3    magnitude occurred, no cumulative prejudice is possible"), citing United States v. Larson,

4    460 F.3d 1200, 1217 (9th Cir.2006) (rejecting cumulative error claim where the court

5    discovered no error in the defendants' trial).   Petitioner has not established that any

6    substantial constitutional error occurred in his case under any of his five cognizable claims.

7    See supra, Sections A-C. Accordingly, the Court **RECOMMENDS** that Petitioner's sixth claim

8    be **DENIED**.

9    **E.    Motion for Appointment of Counsel**

10           Petitioner also has filed a motion to appoint counsel.   ECF No. 24.   In support,

11   Petitioner states that "it will be in the interest of justice to appoint counsel due to Petitioner

12   did not get (sic) a fair trial," and that he "does not know the law as well as the Court."  Id.

13   Petitioner also states that because of a prison lockdown, he "has no way of looking up

14   cases."  Id.   The Sixth Amendment right to counsel does not extend to federal habeas

15   corpus actions by state prisoners.  McCleskey v. Zant, 499 U.S. 467, 495 (1991); Nevius v.

16   Sumner, 105 F.3d 453, 459 (9th Cir. 1996) (noting that there currently exists no

17   constitutional right to appointment of counsel in habeas proceedings): Chaney v. Lewis, 801

18   F.2d 1191, 1196 (9th Cir. 1986).   However, courts may appoint counsel for financially

19   eligible habeas petitioners seeking relief pursuant to 28 U.S.C. § 2254 whenever the court

20   "determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B); Terrovona

21   v. Kincheloe, 912 F.2d 1176, 1181 (9th Cir. 1990) (citing 18 U.S.C. § 3006A(a)(2)(B));

22   Chaney, 801 F.2d at 1196 ("[i]ndigent state prisoners applying for habeas corpus relief are

23   not entitled to appointed counsel unless the circumstances of a particular case indicate that

24   appointed counsel is necessary to prevent due process violations.").   Whether or not to

25   appoint counsel is a matter left to the court's discretion, unless an evidentiary hearing is

26   necessary. Knaubert v. Goldsmith, 791 F.2d 722, 729-30 (9th Cir. 1986) (explaining that the

27   interests of justice require appointment of counsel when the court conducts an evidentiary

28   hearing on the petition.).

1    The court's discretion to appoint counsel may be exercised only under "exceptional

2    circumstances." Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991).[9] "A finding of

3    exceptional circumstances requires an evaluation of both the likelihood of success on the

4    merits and the ability of the petitioner to articulate his claims pro se in light of the complexity

5    of the legal issues involved.  Neither of these factors is dispositive and both must be viewed

6    together before reaching a decision." Id. (citations and internal quotation marks omitted).

7    The Court has reviewed the pleadings submitted by Petitioner[10] in this case and finds

8    that Petitioner has a sufficient grasp of the legal issues involved in this case, and that

9    Petitioner was able to articulate those claims adequately without legal assistance.  Under

10   such circumstances, a district court does not abuse its discretion in denying a state prisoner's

11   request for appointment of counsel as it is simply not warranted by the interests of justice.

12   See LaMere v. Risley, 827 F.2d 622, 626 (9th Cir. 1987) (affirming district court's denial of

13   request for appointment of counsel where pleadings demonstrated petitioner had "a good

14   understanding of the issues and the ability to present forcefully and coherently his

15   contentions").  Moreover, for the reasons set forth in this Report and Recommendation, the

16   Court finds that there is no basis for an evidentiary hearing so appointment of counsel is not

17   required.  Accordingly, Petitioner's Request for Appointment of Counsel is **DENIED.**

18                              **CONCLUSION AND RECOMMENDATION**

19   For the foregoing reasons, this Court **DENIES** Petitioner's motion to appoint counsel

20   and **RECOMMENDS** that the District Judge issue an order: (1) approving and adopting this

21   Report and Recommendation, and (2) directing that Judgment be entered denying the

22   Petition.

23   **IT IS ORDERED** that no later than **April 29, 2013**, any party to this action may file

24   written objections with the Court and serve a copy on all parties.  The document should be

25   
26   [9] The Terrell court cited 28 U.S.C. § 1915(d), but the legislature subsequently renumbered this section as 28 U.S.C. § 1915(e)(1).

27   
28   [10] While the memorandum of points and authorities supporting the Petition was drafted by Petitioner's appellate counsel, Robert Boyce, Petitioner submitted, on his own behalf, a motion for stay and abeyance (ECF No. 10), and a traverse to Respondent's answer (ECF No. 25).

1 captioned "Objections to Report and Recommendation."

2     **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the

3 Court and served on all parties no later that **May 20, 2013**. The parties are advised that

4 failure to file objections within the specified time may waive the right to raise those

5 objections on appeal of the Court's order.  <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th

6 Cir. 1998).

7     **IT IS SO ORDERED.**

8 DATED:  April 2, 2013

9

10 BARBARA L. MAJOR
    United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28